IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MELISSA HAND,

    Plaintiff,            CV-06-6044-KI

 v.                OPINION AND ORDER

JO ANNE B. BARNHART,
Commissioner of Social Security,

      Defendant.

**RICHARD F. MCGINTY**
McGinty & Belcher, Attorneys
P.O. Box 12806
Salem, OR 97301

  Attorney for plaintiff

**KARIN J. IMMERGUT**
United States Attorney
**NEIL J. EVANS**
Assistant United States Attorney
1000 SW Third Ave, Suite 600
Portland, Oregon 97204

1 - OPINION AND ORDER

**TERRYE E. SHEA**
Special Assistant United States Attorney
Assistant Regional Counsel
Social Security Administration
701 Fifth Ave, Suite 2900 M/S 901
Seattle, Washington 98104

   Attorneys for defendant

KING, Judge:

## INTRODUCTION

   Plaintiff Melissa Hand brings this action pursuant to the Social Security Act (the Act), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner. The Commissioner denied plaintiff's application for disability insurance benefits (SSD) under Title II of the Act and for supplemental security benefits (SSI) under Title XVI of the Act. For the reasons set forth below, the Commissioner's decision is AFFIRMED.

## BACKGROUND

   On November 9, 2002 Plaintiff filed her application for SSI, Tr. 569-72, and on November 11, 2002, Plaintiff protectively filed her applications for SSD. Tr. 43-46. Her applications were denied as were her requests for reconsideration. Tr. 24-28, 573-75. Plaintiff timely requested a hearing.

   On May 5, 2005 Administrative Law Judge (ALJ) Dan Hyatt held a hearing after which he issued a ruling finding Plaintiff not disabled. *See* Tr. 576-603; 13-20. Plaintiff timely requested review of the decision, and on January 31, 2006, the Appeals Council denied review. Tr. 6-8, 9.

At the time of the ALJ's decision, Plaintiff was a 40-year-old married woman with two minor children. She alleges disability since May 20, 1999 due to depression, fibromyalgia, carpal tunnel syndrome, tendinitis, epicondylitis, high blood pressure, anxiety and diabetes. Tr. 61. Plaintiff has a high school diploma and two years of college course work. Tr. 67 She has prior work history as an instructional aide, customer assistant, job developer, accounts payable clerk and salesperson. Tr. 62.

## STANDARD OF REVIEW

This court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

Questions of credibility and resolutions of conflicts in the testimony are functions solely of the Commissioner, *Waters v. Gardener*, 452 F.2d 855, 858 n.7 (9th Cir. 1971), but any negative credibility findings must be supported by findings on the record and supported by substantial evidence. *Cequerra v. Secretary of Health and Human Services*, 933 F.2d 735, 738 (9th Cir. 1991). The findings of the Commissioner as to any fact, if supported by substantial

evidence, shall be conclusive.  42 U.S.C. § 405(g).  However, even "where findings are supported by substantial evidence, a decision should be set aside if the proper legal standards were not applied in weighing the evidence in making the decision."  *Flake v. Gardener*, 399 F.2d 532, 540 (9th Cir. 1968); *see also Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

Under sentence four of 42 U.S.C. § 405(g), the court has the power to enter a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the cause for a rehearing.

## COMMISSIONER'S DECISION

The initial burden of proof rests upon the claimant to establish disability.  *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986).  To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected…to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  A five-step sequential process exists for determining whether a person is disabled.  *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.

In step one, the Commissioner determines whether a claimant is engaged in "substantial gainful activity" (SGA).  *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b); 416.920(b).  The ALJ found that Plaintiff had not engaged in SGA during the relevant period. Tr. 19.

In step two, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1520(c); 416.920(c).  If the Commissioner finds in the negative, then claimant is not disabled.  If the Commissioner finds a severe impairment or combination thereof, the inquiry moves to step three.  *Yuckert*, 482 U.S. at

4 - OPINION AND ORDER

140-41; 20 C.F.R. §§ 404.1520(c); 416.920(c).  The ALJ found that Plaintiff has medically

determinable severe impairments including depression, obesity and a "chronic pain

disorder/somatoform disorder."  Tr. 15.  The ALJ also found that Plaintiff has non-severe

impairments including anxiety, diabetes, irritable bowel syndrome, asthma and carpal tunnel

syndrome.  *Id*.  The ALJ observed that the record failed to show any diagnosis of fibromyalgia

that was the result of an examination by a rheumatologist.  *Id*.  He concluded that the evidence in

the record of fibromyalgia is based entirely on Plaintiff's self reporting.  *Id*.

In step three, the analysis focuses on whether the impairment or combination of

impairments meets or equals "one of a number of listed impairments that the [Commissioner]

acknowledges are so severe as to preclude gainful activity."  *Yuckert*, 482 U.S. at 140-41; *see* 20

C.F.R. §§ 404.1520(d); 416.920(d).  If so, the claimant is conclusively presumed disabled; if not,

the analysis proceeds to step four.  *Yuckert*, 482 U.S. at 141.  The ALJ found that Plaintiff's

medically determinable severe impairments do not meet or medically equal one of the listed

impairments. Tr. 19.

In step four, the Commissioner determines whether the claimant can still perform past

relevant work.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If the claimant is so able, then the

Commissioner finds the claimant not disabled.  In doing so, the Commissioner must first identify

the claimant's residual functional capacity (RFC), which reflects the claimant's ability to perform

sustained work activities in an ordinary work setting for eight hours a day, five days a week.

Social Security Regulation (SSR) 96-8p.  The ALJ concluded that Plaintiff retains the RFC to

"engage in light exertion work with a sit and/or stand options, that is simple and repetitive and

requires only occasionally contact with others." Tr. 19. The ALJ found that Plaintiff was unable to return to her past relevant work. Tr. 18.

In step five, the burden rests with the Commissioner to identify work in the national economy that the claimant is capable of performing according to the claimant's RFC. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(f), 404.1560(c). If the Commissioner meets this burden and proves that the claimant is able to perform other work that exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966. If the Commissioner fails to meet this burden, then the claimant is disabled. The ALJ found that Plaintiff is capable of performing substantial gainful activity in jobs that exist in significant numbers in the national economy. Tr. 19. Those jobs include security system monitor, file clerk, office helper and assembly worker. Tr. 18-19.

## **DISCUSSION**

On appeal, Plaintiff makes three arguments: first, that the ALJ failed to give appropriate weight to the testimony of Dr. Verburg, a treating physician, Dr. Taylor, an examining physician, and Dr. Cochran, an examining psychologist; Plaintiff's Opening Brief at 12; second, that the ALJ erred at step three by failing "to consider the functional limitations related to plaintiff's pain disorder/somatoform disorder" *id*. at 30; and third, the ALJ rejected Plaintiff's testimony about her functional limitations without giving legally sufficient reasons to do so. *Id*. at 32.

I review the ALJ's analysis of Plaintiff's credibility first because resolution of this issue informs the analysis of the ALJ's conclusions about the physicians' opinions. *See Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989)(holding that disregarding a physician's opinion because it was

based on a claimant's subjective complaints, which the ALJ had already properly discounted, is a specific, legitimate reason for rejecting the opinion of a treating physician).

## I. Credibility of the Claimant

To evaluate a claimant's testimony regarding exceptional limitations, the ALJ must consider first if there is objective medical evidence of impairment that could reasonably be expected to produce some degree of symptom. *Smolen v. Chater*, 80 F.3d 1273,1282 (9th. Cir. 1996) citing *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir.1986). This test requires only that the causal relationship between the impairment and the symptom be a reasonable inference, not a medically proven phenomenon. *See Howard v. Heckler*, 782 F.2d 1484, 1488 (9th Cir.1986) (noting that "we have never required that the medical evidence identify an impairment that would make the pain inevitable"). "So long as the adjudicator makes specific findings that are supported by the record, the adjudicator may discredit the claimant's allegations based on inconsistencies in the testimony or on relevant character evidence. But the adjudicator may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence." *Banal v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991). If the ALJ makes such a finding, and there is no evidence of malingering, the ALJ can reject the claimant's testimony only if the ALJ gives clear and convincing reasons to do so. *Smolen*, 80 F.3d at 1284-85.

As an initial matter I find that the ALJ rejected statements that, if true, would effect the outcome of the hearing. Specifically, the ALJ rejected Plaintiff's testimony that she is unable to work due to her impairments. I further find that there is no evidence or allegation of

OPINION AND ORDER—7

malingering.  I now turn to the question of whether the ALJ properly evaluated Plaintiff's testimony.

The ALJ found Plaintiff's testimony, "partially credible to the extent she does have limitations resulting from her impairments but not to the extent she is unable to perform any work activities."  Tr. 16.  The ALJ gave the following reasons for his conclusion:  she is a full time mother and takes care of her children without help from her husband; poor effort during examinations; her diabetes and asthma are controlled by medication; she never followed through on therapy or surgery for her carpal tunnel syndrome; she told Kaiser in 2002 that she was looking for work, but would prefer to be on disability so she could stay home to take care of her children; she has plans to travel to Disneyland and to see her sister; and that in 2003 her primary care physician opined that Plaintiff was not disabled.  *Id.*

Plaintiff argues that the ALJ failed to give clear and convincing reasons to find Plaintiff's allegations only partially credible.  Plaintiff's Opening Brief at 32-33.  However, Plaintiff fails to address with any specificity the legal and factual sufficiency of the reasons provided by the ALJ.  A review of the record indicates that all but one of the ALJ's reasons for partially rejecting Plaintiff's testimony regarding her limitations are supported by the record.

The record reflects that Plaintiff has said that she is entirely responsible for taking care of her children.  Tr. 421.  The record reflects that her diabetes and asthma are controlled by medication.  *See* Tr. 467.  In addition, she never participated in therapy and refused recommended surgery to correct her carpal tunnel syndrome.  Tr. 582  Plaintiff told Kaiser that she was looking for work, but would prefer to be on disability.  Tr. 468. In addition, Plaintiff was planning a trip to Disneyland, *id.*, and a trip to see her sister.  Tr. 461.  Finally, the record also

OPINION AND ORDER—8

reflects that in 2003 Plaintiff's primary care physician opined that Plaintiff did not have a disabling diagnosis.  Tr. 432.

Neither the ALJ nor the Commissioner on appeal cite a particular record to support the ALJ's conclusion that Plaintiff gave poor effort during examination.  There is a record from an evaluation from June, 1993, almost six years before her alleged onset date, where the examiner observed, "She is overall amenable to the examination and I feel gives poor effort due to pain behavior."  Tr. 142

Notwithstanding the above observation, I find that the ALJ gave clear and convincing reasons for partially rejecting Plaintiff's testimony regarding her limitations.

## II.  Opinions of Drs. Verburg, Taylor and Cochran

Plaintiff argues that the ALJ improperly rejected the opinions of Dr. Verburg, a treating physician, Dr. Taylor, an examining physician, and Dr. Cochran, an examining psychologist.  Plaintiff's Brief at 12-30.  For the reasons stated below I disagree.

Generally, a treating physician's opinion is afforded the greatest weight in disability cases because the treating physician is employed to cure and has the best opportunity to know and observe the patient as an individual.  *Ramirez v. Shalala*, 8 F.3d 1449, 1453 (9th Cir. 1993).  A treating physician's opinion is controlling when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent" with other evidence of record.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  An opinion from a reviewing physician may not be the sole basis for rejecting the opinion of a treating physician, but can be the basis for finding that the opinion of a treating physician is not controlling.  *Widmark v. Barnhart*, 454 F.3d 1063, 1066 n.2 (9th Cir. 2006).

OPINION AND ORDER—9

An ALJ can reject a treating physician's opinion in favor of the conflicting opinion of another treating or examining physician, if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002) quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If the treating physician's opinion is not contradicted by another physician, then the ALJ may reject it only for clear and convincing reasons. *Id.*

20 C.F.R. section 1527(d) lists factors the Commissioner will consider when weighing medical opinions. Specifically, the ALJ should consider whether a physician treated or examined the claimant, how long the physician treated the claimant, and the nature and extent of the treatment; whether the physician presents evidence to support an opinion; whether the opinion is consistent with the record as a whole; whether the physician is a specialist; and any other factor brought to the attention of the Commissioner. 20 C.F.R.§ 404.1527(d).

**A. Treating Physician Dr. Verburg**

Dr. Verburg is Plaintiff's treating psychiatrist and has been treating her since February 2002. Tr. 392. In May of 2004 he wrote a letter to Plaintiff's attorney summarizing his treatment of her. *Id*. Dr. Verburg diagnosed Plaintiff with a major recurrent depressive disorder. Tr. 392. Her depression ranges in severity and results in disrupted sleep, psychomotor retardation, daily fatigue, a diminished ability to think and anhedonia.[1] *Id*.

The ALJ rejected Dr. Verburg's opinion because his opinions were "conclusions not based on medical opinions about specific functional limitations;" not adequately supported by the

---

[1] Anhedonia is "a psychological condition characterized by inability to experience pleasure in normally pleasurable acts." Merriam Webster's College Dictionary 45 (10th ed. 1997).

OPINION AND ORDER—10

medical record nor by specific psychological or psychiatric testing; and because Dr. Verburg

failed to produce evidence of specific functional limitations. Tr. 17. The ALJ noted that Dr.

Verburg "fails to explain how the claimant is able to raise two children and maintain her

household by herself but is unable to work." *Id*. Further, the ALJ asserts that Plaintiff receives

"little, if any, meaningful treatment." *Id*. Finally, the ALJ noted that "there is no indication that

Dr. Verburg is even aware of the requirements for an award of disability benefits under the Act

and governing regulations." *Id*.

Dr. Verburg's opinion is not controlling, because other physicians opine that Plaintiff is

limited to light work. *See* 20 C.F.R. § 404.1527(d)(2); Tr. 552. Therefore, I must consider

whether the ALJ made "findings setting forth specific, legitimate reasons for doing so that are

based on substantial evidence in the record." *Thomas* at 956-57.

First, I agree with the ALJ that there is no evidence in the record that Dr. Verburg

conducted specific psychiatric or psychological tests, although he ordered an evaluation of

Plaintiff. Susan Bamford, L.C.S.W. conducted the evaluation of Plaintiff on March 19, 2002,

and diagnosed Plaintiff with depression. Tr. 506. There is no evidence in the record that Ms.

Bamford conducted any specific psychiatric or psychological tests during her evaluation.

Next, the ALJ concluded that Dr. Verburg relied on no objective evidence of Plaintiff's

limitations, rather he relied only on Plaintiff's subjective complaints. Plaintiff argues that there is

objective evidence of Plaintiff's limitations: Ms. Bamford's assessment of a GAF of 55 on March

19, 2002.

The Global Assessment of Functioning (GAF) is a tool for a clinician to report his or her

judgment of an individual's level of functioning with respect to psychological, social and

OPINION AND ORDER—11

occupational functioning.  American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders IV-TR* 33 (4th ed. 2000).  A GAF score considers two components: the severity of one's symptoms and the ability of one to function.  *Id*.  A GAF score between 51 and 60 indicates that an individual has "[m]oderate symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) [or] any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).  *Id*. at 34.

There is no evidence in the record that Ms. Bamford relied on anything other than Plaintiff's representations in making her GAF determination.  Even if the GAF could be considered objective evidence of Plaintiff's limitations, a GAF of 55 does not mean that Plaintiff is unable to work due to her psychological impairments.  Indeed, if an individual is unable to work due to psychological impairments, then he or she would have a GAF in the range between 31 and 40.  *Id*. (indicating that a person with a GAF between 31 and 40 has "some impairment in reality testing or communication (e.g., speech is at times illogical, obscure or irrelevant) [or] major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work…")).

Next, in rejecting Dr. Verburg's opinion, the ALJ relied on his observation that Plaintiff has received "little, if any meaningful treatment" from Dr. Verburg.  The record does not support this conclusion.  Plaintiff has been in counseling and on antidepressant medication since at least 2002.  Furthermore, at the suggestion of one of her mental health providers, she uses a special light to treat the seasonally-related aspects of her depression.

The ALJ's final reason for rejecting Dr. Verburg's opinion was that there is no evidence that Dr. Verburg is aware of the legal requirements for a finding of disability.  Plaintiff argues,

OPINION AND ORDER—12

"plaintiff is not certain of the legal significance of this allegation." Plaintiff's Opening Brief at

17. The legal significance of the ALJ's observation is found in 20 C.F.R. section 404.1527(c)(6).

This section allows the Commissioner when evaluating medical evidence to consider "the

amount of understanding of our disability programs and their evidentiary requirements that an

acceptable medical source has . . . ." 20 C.F.R. §404.1527(c)(6). I agree with the ALJ that there

is no evidence in the record that Dr. Verburg is familiar with the legal standards for determining

disability. Therefore, this basis for rejecting Dr. Verburg's opinion is well-founded in law and

supported by the record.

I find that in affording little weight to the opinion of Dr. Verburg, the ALJ gave specific,

legitimate reasons for doing so that are based on substantial evidence in the record.

### B. Examining Physician Dr. Taylor

Dr. Taylor examined Plaintiff for 35 minutes on behalf of the Commissioner. He

assessed Plaintiff's RFC as follows:

> She can stand and/or walk three hours in an eight-hour day broken up into 15-
> minute intervals, secondary to the neck and back pain that is exacerbated with
> prolonged walking. She can sit for three hours in an eight-hour day broken up
> into 15-minute intervals, secondary to the low back pain and muscle tightness
> occurring with prolonged sitting. She does not use any assistive devices. The
> amount of weight she can lift or carry is 20 pounds occasionally. This is
> secondary to the low back pain, hand pain, and bilateral carpal tunnel syndrome.
> She can only perform bending, stooping, and crouching occasionally secondary to
> the low back pain with repetitive movement. She des not have any manipulative
> limitations on reaching, handling, feeling, grasping, and fingering. She has no
> relevant visual, communicative, or environmental limitations.

Tr. 313.

The ALJ found that Dr. Taylor's opinions are "completely unsupported by the objective

medical records and is contradicted by the claimant's activities on a daily basis in regards to

OPINION AND ORDER—13

maintaining her household and raising her two children . . . [and] is not supported by his own examination that was essentially within normal limits and only noted the claimant's subjective complaints of tenderness upon palpatation in every area of her body." Tr. 17.

Plaintiff argues that the ALJ erred as a matter of law by failing to give controlling weight to Dr. Taylor's opinion. Plaintiff's Opening Brief at 18. Dr. Taylor's opinion is not controlling, because his opinion conflicts with that of Dr. Lahr. Dr. Lahr concluded that Plaintiff is limited to light work. *See* 20 C.F.R. § 404.1527(d)(2); Tr. 547-51. Therefore, I must consider whether the ALJ made "findings setting forth specific, legitimate reasons . . . that are based on substantial evidence in the record." *Thomas* at 956-57.

Dr. Taylor's opinion regarding Plaintiff's ability to lift 20 pounds occasionally is consistent with the findings of Dr. Lahr and with the ALJ's RFC. *See* Tr. 18, 548. Furthermore, Dr. Taylor and Dr. Lahr also agree that Plaintiff should be limited to stooping, crouching and crawling occasionally. Tr. 549. However, Dr. Taylor and Dr. Lahr disagree on how long Plaintiff is able to stand. Dr. Taylor opined that Plaintiff can stand for three hours in an eight-hour day broken into 15-minute intervals and sit for three hours in an eight-hour day broken in to 15-minute intervals because her neck and back pain is exacerbated by prolonged walking and prolonged sitting. Dr. Lahr concluded that Plaintiff can stand, sit or walk for six hours in a regular eight-hour work day with regular breaks. Tr. 548.

In his RFC the ALJ noted that Plaintiff is limited to light work with a stand/sit option. If the ALJ had accepted Dr. Taylor's opinion regarding Plaintiff's abilities to stand and sit , it is unclear whether the ALJ's RFC would have been different. In an abundance of caution, I will

OPINION AND ORDER—14

assume that Dr. Taylor's opinions about Plaintiff's ability to stand and sit would have affected the ALJ's RFC.

Therefore, I turn to the question of whether Dr. Taylor's opinion regarding Plaintiff's ability to stand is "completely unsupported by the medical record." Plaintiff argues that because the ALJ found that Plaintiff suffered from depression, obesity and a chronic pain syndrom/somatoform disorder the ALJ made a "legal admission" that Dr. Taylor's opinion is supported by the medical record. Plaintiff's Brief at 20. Plaintiff goes on to say that "if there are no objective medical records, the ALJ's decision is then not supported by substantial evidence because it is internally inconsistent." *Id.*

Plaintiff gives no authority for what constitutes a "legal admission" in this context. Furthermore, Plaintiff cites to no medical record that links Plaintiff's medical problems with Dr. Taylor's opinions. Therefore, there is no basis for concluding that Plaintiff's severe impairments would necessarily make her unable to stand or sit for more than three hours at a time during an eight-hour work day. Finally, Plaintiff gives no example of objective medical evidence in the record that supports Dr. Taylor's opinions about her limitations in her ability to stand. A review of the record indicates that there are no records providing support for Dr. Taylor's conclusion that Plaintiff can stand no more than three hours at a time during an eight-hour day.

The ALJ rejected Dr. Taylor's opinions on the additional ground that his opinion is "contradicted by the claimant's activities on a daily basis in regards to maintaining her household and raising her two children." Tr. 17. Plaintiff argues in response that she does not need to be completely incapacitated to be disabled. Plaintiff's Brief at 20. Plaintiff's statement is legally correct, but inapplicable to this case. *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir.

OPINION AND ORDER—15

2001).  Nothing in the ALJ's opinion can be reasonably interpreted to mean that the ALJ was

holding Plaintiff to an illegal standard for disability.  Rather, the ALJ points out a portion of the

evidence that is inconsistent with Dr. Taylor's opinion about her limitations:  that Plaintiff is

raising two small children and maintaining a household without any assistance.

Plaintiff's reliance on *Vertigan*, 260 F.3d at 1050 is misplaced.  In *Vertigan* the Ninth

Circuit was reviewing the ALJ's rejection of the Plaintiff's subjective complaints of pain.

Nothing in the *Vertigan* opinion suggests that the analysis for reviewing the ALJ's rejection of

Plaintiff's allegations of pain is transferrable to a review of the ALJ's rejection of a doctor's

opinion.

Next, Plaintiff takes issue with the ALJ's statement that Dr. Taylor's conclusion is not

supported by the results of his own examination, which were within normal limits.  Plaintiff's

Opening Brief at 21-22.  Plaintiff argues that the ALJ is "playing doctor" and that the record does

not support his conclusion.  First, Plaintiff notes that Dr. Taylor said that she is obese.  The

records indicate that Plaintiff is obese, but nothing in the record indicates, and Plaintiff never

argues, that her obesity is a basis for disability in her case.

Next, Plaintiff notes that during his examination Dr. Taylor found that she gave good

effort during examination.  Plaintiff does not explain the relevance of her effort during her

examination to the ALJ's findings that her test results were within normal limits.

Plaintiff goes on to argue that Dr. Taylor found that "'Romberg' was absent."  Plaintiff's

Opening Brief at 21.  While Plaintiff accurately quotes Dr. Taylor's record, Plaintiff fails to

explain how an absent Romberg finding is a symptom of disability.  A Romberg sign is present

"when a patient, standing with feet approximated becomes unsteady or much more unsteady with

OPINION AND ORDER—16

eyes closed." *Stedman's Medical Dictionary* 1771 (28th ed. 2006).  The record shows that Plaintiff's performance on the Romberg test was normal.  Tr. 312.

However, Plaintiff goes on to illustrate other findings of Dr. Taylor that might not be within normal limits.  Plaintiff's Opening Brief at 22.  For example, Plaintiff had tenderness in her entire neck and back; "4/5 strength" in the upper and lower extremities secondary to pain; decreased sensation in the left upper and lower extremities and "2+" reflexes.  *Id*.  Although Plaintiff, again, fails to illustrate how these findings support Dr. Taylor's conclusions, the record does not support the ALJ's conclusion that the results of all of Dr. Taylor's tests were within normal limits.  I find that this basis for the ALJ's rejection of Dr. Taylor's opinion is not supported by substantial evidence in the record.

In her next argument Plaintiff accuses the ALJ of being "disingenuous" for asserting that Dr. Taylor's conclusion was unsupported by Dr. Coplon's finding that Plaintiff was not disabled. Plaintiff's Opening Brief at 22.  In its entirety, Dr. Coplon's note reads:

> Spoke with patient.  She is trying to pursue social security disability.  Discussed that medically she does not have a clearly defined disabling diagnosis. Fibromyalgia is not considered by most physicians to be disabling.  Depression may be disabling but that determination should be made by a MH specialist.  I will cooperate with providing medical information about her condition if requested but I do not provide specific disability reports or exams.

Tr. 432.

Plaintiff argues that the Commissioner considers fibromyalgia to be a potentially disabling impairment.  Plaintiff's Brief at 22.  Again, Plaintiff cites no legal authority for this conclusion.   Fibromyalgia is not included in the listing of impairments in 20 C.F.R 404, subpt. P, app.1.

OPINION AND ORDER—17

Plaintiff accuses the ALJ of accepting Dr. Coplon's assessment of not disabled while at the same time rejecting Dr. Verburg's assessment of disabled on the grounds that Dr. Verburg was not familiar with the standards for determining disability. Nothing in the ALJ's opinion indicates that he accepted Dr. Coplon's assessment. In fact, the ALJ found that Plaintiff has some physical limitations. Nothing in Dr. Coplon's records indicates that he believed that Plaintiff had any physical limitations at all. The ALJ did not adopt Dr. Coplon's opinion; rather, the ALJ simply noted that Dr. Taylor, an examining physician, is contradicted by Dr. Coplon, a treating physician.

Plaintiff's last argument regarding the ALJ's treatment of Dr. Taylor's opinion is that the ALJ improperly relied on the conclusion of a reviewing physician, Dr. Lahr, because an ALJ may not fail to give controlling weight to an examining physician on the sole basis of a reviewing physician. This argument lacks merit.

Dr. Taylor is not entitled to controlling weight because his opinion conflicts with that of other physicians 20 C.F.R. § 404.1527(d)(2). If an ALJ rejects the opinion of an examining physician that is not given controlling weight because there are conflicting medical opinions, the ALJ must make "findings setting forth specific legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas* at 956-57.

Furthermore, the ALJ did not reject Dr. Taylor's opinion on the sole ground that it conflicts with the opinion of an examining physician. As discussed at length in the ALJ's decision, Plaintiff's Opening Brief and in this Opinion and Order, the ALJ gave several specific legitimate reasons for rejecting Dr. Taylor's opinion. All but one of the reasons given by the ALJ

OPINION AND ORDER—18

are supported by substantial evidence in the record.  Therefore, I find that the ALJ properly

rejected Dr. Taylor's opinion.

### C.  Examining Psychologist Dr. Cochran

Dr. Cochran examined Plaintiff once on March 30, 2005.  Tr. 553.  Dr. Cochran

interviewed Plaintiff and conducted several psychological tests.  Dr. Cochran concluded that

Plaintiff suffers from a dysthymic disorder, a somatoform disorder, a pain disorder, an anxiety

disorder and a personality disorder with hypochondriacal and avoidant features.  Tr. 563.  As a

result of these conditions, Plaintiff has moderate limitations in her ability to understand,

remember and carry out short, simple instructions, and moderate limitations on her ability to

make judgments on simple work-related decisions.[2]  Tr. 566.  Dr. Cochran also found that

Plaintiff has marked limitations to understand, remember and carry out detailed instructions.  *Id*.

Finally, Dr. Cochran concluded that Plaintiff has marked limitations to interact appropriately

with the public, supervisors, coworkers and marked limitations to respond appropriately to work

pressures in a usual work setting and respond appropriately to changes in a routine work setting.[3]

Tr. 567.

The ALJ afforded Dr. Cochran's opinion little weight because his assessments were based

on Plaintiff's subjective complaints, rather than the objective testing; the testing revealed that

Plaintiff suffers from depression and a somatoform disorder that is consistent with her

complaints of pain;  the testing also revealed that she is hypochondriacal and has secondary gain

---

[2] An individual with moderate limitations is able to function satisfactorily.  Tr. 566.

[3] An individual with marked limitations has severely limited ability to function, but is not
precluded from functioning satisfactorily.  Tr. 566.

issues.  Tr. 17-18.  The ALJ also noted that Dr. Cochran did not review Plaintiff's medical

records to confirm any of her reported  limitations, symptoms and medical history.  Tr. 18.  The

ALJ concluded that Dr. Cochran's conclusions are not supported by the medical records nor by

the opinions of the other examining and reviewing physicians.  *Id*.

Plaintiff first argues that the ALJ is not qualified to determine what weight an examining

psychologist gave to test results compared with subjective complaints.  In support of this

argument, Plaintiff cites 20 C.F.R. sections 404.1513 and 416.913.  These identical sections list

sources of evidence that the Commissioner will consider in determining whether a claimant is

disabled.  Nothing in these sections describes whether and how an ALJ may consider certain

pieces of evidence.  I conclude Plaintiff's first argument is without merit.

Plaintiff makes two arguments about the ALJ's concern that Plaintiff has secondary gain

issues.  Plaintiff's Opening Brief at 27, 28. Because these arguments are indistinguishable, I

address these arguments together.  Plaintiff argues that the ALJ "has not candidly reported the

evidence" because he found that Dr. Cochran determined that Plaintiff is hypochondriacal and

has secondary gain issues, and the record reflects that her diagnosis of personality disorder with

hypochondriacal and avoidant features is but one of five diagnosed conditions.  Plaintiff's Brief at

27.  Plaintiff provides no legal basis for the significance of this observation.

Furthermore, Plaintiff appears to ask this court to apply selectively portions of Dr.

Cochran's report.  Plaintiff's Brief at 27 n.21.  At many points in Dr. Cochran's report, he appears

to be discussing in the abstract the possible afflictions Plaintiff might be suffering.  *See* Tr. 561.

Plaintiff would have this court interpret Dr. Cochran's note that people with Plaintiff's MMPI

score often have secondary gain issues to mean that Plaintiff might have secondary gain issues,

but she actually does not.  Applying Plaintiff's interpretation of that phrase to Dr. Cochran's

entire report would result in this court not knowing what parts of Dr. Cochran's descriptions of

symptomologies are about Plaintiff and what parts are simply general observations.  Such a

reading would render most of the report potentially inapplicable to Plaintiff.  Although Dr.

Cochran's choice of verb tense is unfortunate, the ALJ's reading of his report is reasonable.

Specifically, it is reasonable to assume that when Dr. Cochran is discussing the symptomology of

Plaintiff's psychiatric disorders he is talking about the Plaintiff.

Furthermore, other medical providers have noted that Plaintiff has secondary gain issues.

Tr. 468. For example, in September 2003 Ms. Bamford, a social worker providing counseling to

Plaintiff, noted, "PT is somewhat anxious about money and is still applying for jobs although

mostly would like to appt for SSD so she can stay home and attend to her children." Tr. 468.  In

1993, before her alleged onset of disability, Plaintiff sought an evaluation "essentially to have a

disability form filled out so that her insurance will make her vehicle payments." Tr. 143.

Because the ALJ's interpretation of Dr. Cochran's report regarding secondary gain issues

is consistent with the record, I find that the ALJ reasonably interpreted his report to mean that

Plaintiff has secondary gain issues.

Plaintiff next accuses the ALJ of being confused about the significance of Dr. Cochran's

diagnosis of Plaintiff's somatoform disorder.  Plaintiff's Opening Brief at 27.  Plaintiff argues,

again without legal and factual support, that a somatoform disorder can support a finding of

disability.  *Id*.  Nothing in the record supports a conclusion that Plaintiff is disabled due to a

somatoform disorder.  Indeed, Dr. Cochran does not say that Plaintiff's somatoform disorder is

disabling.  All Dr. Cochran says about Plaintiff's somatoform disorder is that she suffers from

OPINION AND ORDER—21

one, is not aware of having one and that as a result she expresses psychological problems through somatic channels. Tr. 564.

Next, Plaintiff considers the ALJ's observation that the Dr. Cochran did not review Plaintiff's medical records; and therefore, was not able to corroborate her symptoms and limitations. Plaintiff's Opening Brief at 28. Plaintiff concedes that Dr. Cochran did not review any medical records. *Id.* The record reflects that Dr. Cochran reviewed "medical reports" and relied on them in assessing Plaintiff's physical limitations. Tr. 567. Because Plaintiff hired Dr. Cochran, Plaintiff is in the best position to know what, if any, records Dr. Cochran reviewed during his assessment. Certainly, if Plaintiff had sent records to Dr. Cochran, Plaintiff would have said so.

Plaintiff argues that had Dr. Cochran reviewed the records his opinion would not have changed because Dr. Verburg read the records and he concluded that Plaintiff was unable to work. There is no reason to rely on this inference. Dr. Lahr reviewed Plaintiff's medical records and found that she was able to work. Tr. 549 Therefore, I reject Plaintiff's argument.

Next, Plaintiff argues that the ALJ incorrectly found that Dr. Cochran's conclusions about Plaintiff's limitations are not supported by the opinions of the other examining and reviewing physicians. Plaintiff's Opening Brief at 29. In support of her argument, Plaintiff cites to opinions by Dr. Verburg and Dr. Kallemeyn. Plaintiff concedes that Dr. Cochran's conclusions are contradicted by Dr. Henry. *Id.* at 29-30.

As noted above, Dr. Cochran opined that Plaintiff has moderate limitations in her ability to understand,  remember and carry out short, simple instructions, and moderate limitations on her ability to make judgments on simple work-related decisions. Tr. 566. Dr. Cochran also

OPINION AND ORDER—22

found that Plaintiff has marked limitations to understand, remember and carry out detailed instructions. *Id.* Finally, Dr. Cochran concluded that Plaintiff has marked limitations to interact appropriately with the public, supervisors, coworkers and marked limitations to respond appropriately to work pressures in a usual work setting and respond appropriately to changes in a routine work setting. Tr. 567.

> Dr. Kallemeyn concluded that
>
> due to her depressive and anxious symptoms, [Plaintiff] would be able to attend to, concentrate on, and persist with simple instructions and tasks, but more complex instruction and tasks may currently be overwhelming for her. Also, due to her reported reduced interest in contact with other people currently due to her depression, a job with low demands for social interaction would likely be more suitable at this time.

Tr. 307. Dr. Kallemeyn and Dr. Cochran agree that Plaintiff is capable of attending to simple instructions and tasks. In determining whether there is work in the national economy Plaintiff is able to do, the ALJ asked the vocational expert to identify jobs that are simple, repetitive tasks. Tr. 598-99.

The record contains two mental RFC assessment forms that contain conclusions that contradict Dr. Cochran's findings. One is unsigned and undated. *See* Tr. 127-130. Plaintiff made no objection to the admission of this document at the hearing, Tr. 578, and makes no mention of the document on appeal. The author of this assessment disagrees with Dr. Cochran on every point, except in finding that Plaintiff is moderately limited in her ability to understand, remember and carry out detailed instructions. Tr. 127-28. In all other categories, the author of this report found that Plaintiff has no significant limitations. Tr. 127-29.

OPINION AND ORDER—23

Dr. Robert Henry, a reviewing psychologist, completed the second mental RFC assessment. *See* Tr. 355-58. He found that Plaintiff had no significant limitations except that she has moderate limitations in her ability to carry out detailed instructions and to maintain attention and concentration for extended periods. Dr. Henry also found that Plaintiff has moderate limitations in her ability to interact appropriately with the general public, and in her ability to respond appropriately to changes in the work setting. Tr. 356-57.

I find that the ALJ correctly found that Dr. Cochran's assessment of Plaintiff's limitations are not supported by opinions of other examining and reviewing physicians. I further find that where Dr. Cochran's assessment is consistent with the other examining psychologist, Dr. Kallemeyn, those assessments were reflected in the ALJ's analysis of Plaintiff's RFC and in determining whether there exist jobs in significant numbers in the national economy suitable for Plaintiff. *See* Tr. 18-19.

Taking into account all of the evidence in the record, I find that in giving Dr. Cochran's opinion little weight, the ALJ made findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.

## III.    Consideration of Plaintiff's Pain/Somatoform Disorder.

Without citing any legal authority, Plaintiff argues that the "ALJ erred as a matter of law because he did not consider the functional limitations related to plaintiff's pain disorder/somatoform disorder." Plaintiff's Opening Brief at 30. In support, Plaintiff argues that Dr. Cochran identified limitations that are not included in the ALJ's RFC. Therefore, Plaintiff reasons, the ALJ must not have considered Plaintiff's limitations due to her pain/somatoform disorders. This argument fails for several reasons.

OPINION AND ORDER—24

First, nothing in the record, including Dr. Cochran's report, identifies Plaintiff's specific limitations due to Plaintiff's pain/somatoform disorder only.  As discussed above, Dr. Cochran's report contains discussions of all symptoms that could possibly affect a person with a somatoform disorder.  Plaintiff has argued previously that not all of these symptoms apply to Plaintiff (*see* Plaintiff's Opening Brief at 27 (arguing that just because Dr. Cochran says she could have secondary gain issues does not mean that she in fact has secondary gain issues)).

Nevertheless, Dr. Cochran articulated the following work limitations that could result from a somatoform disorder:

> They report a wide variety of attitudes and behaviors that are likely to contribute to poor work performance.  They are not ambitious and are lacking in energy.  They express negative attitudes towards co-workers.  The[y] often feel overwhelmed and unable to cope with stress.  They feel insecure.  They often feel like failures.  They have poor self-concepts.  They have problems concentrating.  They have difficulty making decisions and exercise poor judgment.  They feel anxious, tense, worried, and fearful.  They feel depressed, sad and hopeless.  They have low levels of energy.  They often report somatic symptoms.  They have sleep disturbances.

Tr. 562.

In questioning the Vocational Expert, the ALJ asked the expert to consider jobs for a person who was limited to light exertional work with a stand/sit option and further limited to simple repetitive work with occasional contact with co-workers, supervisors and the public.  Tr. 598.  This hypothetical reflects the limitations identified by Dr. Cochran that can manifest from a somatoform disorder.

Furthermore, Dr. Cochran found that Plaintiff had a GAF of 50.  As discussed above, a GAF of 50 does not preclude a person from working.  I find that there is no evidence that the ALJ disregarded any limitations Plaintiff might have due to a pain/somatoform disorder.

OPINION AND ORDER—25

In a footnote, Plaintiff states that the ALJ erred by not finding "Plaintiff's anxiety disorder non-severe impairment, combined with other impairment to determine if [P]laintiff's combined impairments would meet or equal a listing." Plaintiff's Opening Brief at 31 n. 28. This conclusory assertion, unsupported by either references to the record or citation to legal authority, appears to question the ALJ's conclusions at step three. The ALJ found that Plaintiff had an anxiety disorder and that that impairment was not severe. Tr. 19. There is no evidence in the record that Plaintiff's anxiety disorder, combined with any of her severe or non-severe impairments would meet one of the impairments that would necessarily preclude Plaintiff from engaging in SGA. I find that Plaintiff's argument lacks merit.


<u>CONCLUSION</u>

Based on the foregoing, the ALJ's determination was based on proper legal standards and supported by substantial evidence. The Commissioner's final decision is affirmed and the case is dismissed.

IT IS SO ORDERED.

DATED this ___3rd___ day of January, 2007


   /s/ Garr M. King
GARR M. KING
United States District Judge


OPINION AND ORDER—26